## Burre v Kipling Arms, LLC

2025 NY Slip Op 31232(U)

April 10, 2025

Supreme Court, New York County

Docket Number: Index No. 153044/2025

Judge: Phaedra F. Perry-Bond

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. PHAEDRA F. PERRY-BOND**          PART          35

*Justice*

-----------------------------------------------------------------------------X

MERYL A BURRE, KRIS A BOSTON, BETHEL CARAM, CARMEN CRUZ, DAVID DEITSCH, PHYLLIS EDELMAN, MICHAEL FLACK, RUTH FRIEDMAN, VALERIE FEUER, JON GARTENBERG, PETER GOLDBERG, MELISSA KULL, SHARI SEGEL GOLDBERG, CHRISTINA GLEICHER, KRISTINA JOHNSON, SANDRA LAUREANO, JONATHAN MINIKES, JENNIFER MINIKES, MICHAEL OLIVER, ABIGAIL SLOANE, DONNA K SCEUSA, CLAIRE THEROUX, CAROL PERRY, KAREN EHRLICH

|  |  |
|---|---|
| INDEX NO. | 153044/2025 |
| MOTION DATE | 03/10/2025 |
| MOTION SEQ. NO. | 001 |

Plaintiff,

- v -

KIPLING ARMS, LLC,

Defendant.

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49 and 50 were read on plaintiff's order to show cause for an:

INJUNCTION/RESTRAINING ORDER          .

Plaintiffs are twenty-four tenants having either rent-stabilized or rent-controlled apartments in 143-145 West 96th Street, New York, New York, which is owned by defendant, Kipling Arms, LLC (Defendant), and managed by the registered managing agent, Michael Dogherty.

On March 6, 2025, plaintiffs filed a summons and complaint, a proposed order to show cause with temporary restraining order (TRO), and supporting papers, seeking to enjoin Defendant, and its agents, from performing certain building improvements, pending final determination of this

[* 1]

action, or in the alternative these actions are authorization from the New York State Division of Housing and Community Renewal (DHCR). (NYSCEF Docs. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34)

Plaintiffs' TRO, and ultimate relief sought, seeks to prevent Defendant from doing the following: 1) removing the doorbell to the inner door of the lobby; 2) installing an intercom system; 3) eliminating the manually operated elevator; 4) installing automatically operated elevators; 5) reducing and eventually eliminating building staff; and 6) eliminating mail and package receipt by building staff and door-to-door delivery of same.

Plaintiffs duly served and notified Defendant of the hearing. (NYSCEF Docs. 36 and 37) On March 12, 2025, Defendant filed opposition papers (NYSCEF Docs. 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 and 49), and on March 13, 2025, this Court held oral arguments. The parties argued both the TRO, and, due to the duplicative request, the ultimate relief sought by plaintiffs' order. (NYSCEF Doc. No. 2) On March 17, 2025, the Court ordered the TRO granted retroactive to March 13, 2025, and the OSC signed of even date. (NYSCEF Doc. No. 50)

## ARGUMENTS

Plaintiffs contend that defendant's proposed building renovations constitute a modification or reduction of required services under the Rent Stabilization Code (RSC) (9 NYCRR) § 2522.5 (e) and the New York City Rent and Eviction Regulations (9 NYCRR) § 2202.21 (NYSCEF Doc No. 4, ¶ 10). Plaintiffs argue that pursuant to 9 NYCRR 2523.4, landlords of rent-stabilized apartments must maintain all essential services—including manually operated elevators, security staff, and package delivery services—and may not diminish or discontinue any such services without prior approval from DHCR.

Plaintiffs argue that removal of elevator operators and in-person security would irreversibly diminish tenant protections, especially to elderly and disabled residents, who rely on these services for daily assistance, security, and emergency response (NYSCEF Doc No. 4, ¶ 11).

Plaintiffs argue that RSC § 2522.5 (e) (3) allows an owner to file an application to modify or substitute a required service on the grounds that "such modification or substitution is not inconsistent with the Rent Stabilization Law and Code." However, it prohibits any such modification absent prior agency approval: "no such modification or substitution of required services shall take place prior to the approval of the owner's application by the DHCR" (RSC § 2522.5 [e]).

Plaintiffs rely on *350 Cent. Park W. Assoc., LLC*, Admin Rev DHCR Docket No. JS430037RO (May 4, 2022), *affd 350 Cent. Park W. v New York State Div. of Hous. & Community Renewal*, 2003 WL 2029851 (Sup Ct, NY County 2023), *affd* 227 AD3d 492 (1st Dept 2024), where the owner applied to DHCR for permission to eliminate three elevator operators and replace them with one "hall person" (NYSCEF Doc No. 4, ¶ 15).

DHCR determined that the proposed modification of a required service constitutes a reduction in service, and that the Rent Stabilization Law and Code, as well as the Rent Control Laws, unequivocally require owners to obtain DHCR's permission before making any such modification (NYSCEF Doc No. 4, ¶ 2).

Plaintiffs argue that pursuant to 9 NYCRR 2523.4 (a) (1) and 2202.16, any reduction in required services—including modifications—is prohibited unless the owner obtains prior approval from DHCR.

In their opposition, the Defendant argues that the installation of an intercom system, replacement of antiquated elevators with automatic ones, reduction in building staff, and transition

[* 3]

to centralized mailboxes—either constitute permissible enhancements or are *de minimis* modifications that do not warrant injunctive relief under the Rent Stabilization Code (RSC) (NYSCEF Doc No. 38, ¶¶ 26, 27, 34, 36 and 37).

Specifically, Defendant maintains that the installation of an intercom system will supplement, not replace, current services, and, that pursuant to RSC §2520.6(r)(3) such additions do not require prior DHCR approval (NYSCEF Doc No. 38, ¶ 11). They argue that the current system, which involves the elevator operator answering the bell, and screening the visitors is rudimentary. Further, they assert that Defendant initiated plans to install an audiovisual intercom system with a virtual doorman component, to operate alongside existing services. They claim the intercom would be optional and available at no cost to tenants, and no existing door service would be removed absent DHCR approval (NYSCEF Doc No. 38, ¶¶ 6-9).

Similarly, the Defendant's argue that the plan to install a modern automatic elevator, will continue to be attended as required by DHCR, and does not alter the essential service provided. Defendant argues that the replacement is necessary due to repeated breakdowns of the current manually operated 1927-era elevators (NYSCEF Doc No. 38, ¶ 21).

The Defendant contends that it retains discretion over staffing decisions provided that all required services are maintained and that pursuant to RSC §2523.4(e)(22), a reduction in staff—excluding security—is considered *de minimis* and does not constitute a diminution of services.

Further, Defendant argues that the same applies to the proposed mail delivery change; the Defendant recently installed USPS-compliant lobby mailboxes, and RSC §2523.4(e)(15) classifies the elimination of door-to-door delivery in favor of centralized mailboxes as *de minimis* (NYSCEF Doc No. 38, ¶¶ 26, 27, 34, 36 and 37). The building uses a USPS-approved "Drop" system, where staff distribute mail to each unit. Defendant claims that this practice has resulted in safety hazards,

[* 4]

including obstructed hallways and fire code concerns. In response, Defendant argues that it lawfully installed USPS-compliant mailboxes in the lobby under a valid DOB permit. The transition to centralized mail delivery is thus a lawful, safety-driven improvement that neither diminishes required services nor requires DHCR approval (NYSCEF Doc No. 38, ¶¶ 17 -9).

The Defendant argues that Plaintiffs have not demonstrated a likelihood of success on the merits or the existence of irreparable harm, and that Plaintiffs have statutory remedies available through DHCR, including applications for rent reductions under RSC §2524.4(a)(1) (NYSCEF Doc No. 38, ¶ 8). Specifically, they contend that DHCR may compel restoration of services and impose penalties if violations are found, thus, precluding the need for equitable relief. (NYSCEF Doc No. 38, ¶ 7).

## LEGAL STANDARDS

To obtain a preliminary injunction, the moving party must first commence an action by filing a summons and complaint or summons with notice (CPLR 304), as a preliminary injunction cannot be granted in the absence of a pending action (see *Siegel, NY Prac* § 328; *Matter of Withers v New York State Dept. of Envtl. Conservation*, 113 AD3d 906 [3d Dept 2014]). Only then may the movant apply by order to show cause for a temporary restraining order and preliminary injunction pursuant to CPLR 6301 and 6313.

Under CPLR 6301, the movant must establish: (1) a likelihood of success on the merits, (2) irreparable harm if the injunction is not granted, and (3) that the balance of equities favors the movant (see *Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862 [1990]; *Doe v Axelrod*, 73 NY2d 748 [1988]; *Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839 [2005]).

### (1) Likelihood of Success on the Merits

To obtain a preliminary injunction, the movant need not demonstrate certainty of success, but rather a probability of prevailing on the underlying claim (see *Nobu Next Door*, 4 NY3d at 840; *Doe*, 73 NY2d at 750; *Aetna Ins. Co.*, 75 NY2d at 862). A showing of clear entitlement under the law is sufficient (see *State of New York v City of New York*, 275 AD2d 740, 741 [2d Dept 2000]).

Here, plaintiffs' claims of unlawful service reductions—prohibited under the Rent Stabilization Code and Rent Control Laws—are likely to succeed, as defendant concedes in its own papers that it intends to remove human-operated services once DHCR grants approval (see NYSCEF Doc No. 38, ¶ 16). However, defendant has not yet filed any such application. Under 9 NYCRR 2523.4 (a) (1) and 2202.16, any reduction or modification of required services without prior written approval from DHCR is unlawful.

Accordingly, plaintiffs have demonstrated more than a likelihood of success on the merits (see NYSCEF Doc No. 4, ¶ 18)

### (2) Irreparable Harm

Irreparable harm refers to an injury that cannot be adequately remedied by monetary damage alone. Courts have consistently recognized that unauthorized changes to rent-stabilized services, especially those implemented without DHCR approval, may result in irreparable harm to tenants.

In *Nasaw v Jemrock Realty Co.* (225 AD2d 385 [1st Dept 1996]), the Appellate Division upheld the issuance of a preliminary injunction after a landlord unilaterally replaced manned elevators with automatic ones without agency approval. The court found that this constituted a

[* 6]

reduction in services causing irreparable harm, warranting interim relief pending DHCR determination.

Similarly, in *Peyton v PWV Acquisition LLC* (Index No. 155047/2014 [Sup Ct, NY County 2014]), tenants had lease riders guaranteeing assigned parking spaces, which the landlord attempted to relocate without DHCR authorization. The court enjoined the change, holding that DHCR approval is a prerequisite for modifying essential services, and that circumventing such procedures results in irreparable harm.

These decisions confirm that DHCR approval is a legal condition precedent, and unauthorized alterations presumptively harm tenants in ways not compensable by money damages (see also *Goldner v Doknovitch*, 88 AD2d 693 [1st Dept 1982]; *447 Assoc. v Joseph*, 157 Misc 2d 292 [Civ Ct, NY County 1993]; 9 NYCRR 2523.4 [a] [1]; 9 NYCRR 2202.16).

### (3) Balance of Equities:

To obtain a preliminary injunction, the movant must also show that the balance of equities tips in their favor, that is, the harm the movant would suffer if the injunction is denied outweighs the harm the opposing party would suffer if it is granted (see *Nobu Next Door*, 4 NY3d at 840; *Aetna Ins. Co.*, 75 NY2d at 862). Courts examine the relative hardship to each party and determine whether denial would result in a greater injury to the movant (see *Ma v Lien*, 198 AD3d 535, 536 [1st Dept 2021]; *Eastview Mall, LLC v Grace Holmes, Inc.*, 189 AD3d 1721, 1722 [4th Dept 2020]).

Courts do not favor parties who create their own hardship and then seek to avoid the consequences. In *Peyton* (Index No. 155047/2014), the court rejected the landlord's argument that financial harm justified the removal of a tenant benefit when the harm was self-inflicted by failing

to seek DHCR approval. Likewise, in *Gasoline Heaven at Commack, Inc. v Nesconset Gas Heaven, Inc.* (191 Misc 2d 646 [Sup Ct, Suffolk County 2002]), the court emphasized that a preliminary injunction is an extraordinary remedy only available when the moving party has demonstrated a clear right to relief and that the equities favor such relief.

In the present case, defendant's claimed hardship is self-imposed, stemming from its failure to obtain DHCR approval before initiating construction and planning service modifications. As *Peyton* and similar cases make clear, landlords cannot bypass regulatory procedures and then cite anticipated delays or costs as justification for proceeding without approval. Granting the injunction here merely preserves the status quo and prevents irreparable harm to plaintiffs, who rely on existing services for daily safety and accessibility.

Accordingly, the balance of equities favors plaintiffs and supports issuance of a preliminary injunction to maintain essential services pending proper DHCR review.

## DISCUSSION

9 NYCRR 2523.4 (a) (1) and 2202.16, provide that any reduction in required services—including modifications—is prohibited unless the owner obtains prior approval from DHCR. The regulation states that:

"An owner shall maintain all services furnished or required to be furnished pursuant to the Rent Stabilization Law. . . . No decrease in services shall be permitted except by order of the DHCR issued pursuant to a written application . . . and after tenants have been given an opportunity to answer said application."

This interpretation has been upheld in Matter of 350 Cent. Park W. Assoc., LLC v New York State Div. of Hous. & Community Renewal (227 AD3d 492 [1st Dept 2024]), where the

[* 8]

Appellate Division affirmed DHCR's denial of a landlord's application to eliminate elevator operators, holding that the proposed substitution constituted an impermissible reduction in services without prior agency approval. Courts and DHCR have consistently held that altering the fundamental nature of an existing service constitutes a modification requiring prior regulatory approval. In *350 Cent. Park W. Assoc., LLC* (227 AD3d 492 [1st Dept 2024]), DHCR denied landlord's request to replace elevator operators with a hall person, finding that such a change constituted a reduction in required services.

In Peyton v PWV Acquisition LLC (35 Misc 3d 1207[A], 2012 NY Slip Op 50606[U] [Sup Ct, NY County 2012], affd 101 AD3d 446 [1st Dept 2012]), the court held that "RSC § 2522.5 (e) provides that a landlord may not modify or substitute a required service without first receiving approval by DHCR." See also Charles H. Greenthal & Co., Inc. v 301 E. 21st St. Tenants' Assn. (91 AD2d 934, 935 [1st Dept 1983] ["The pertinent provisions which govern rent control and rent-stabilized apartments preclude a landlord from discontinuing essential services without appropriate application before the administrative agencies (Rent Control Laws NYC Admin Code § 26-401 et seq.; RSC §§ 2[m], 62)"]).

Similarly, in *Douglas Elliman Prop. Mgt. v New York State Div. of Hous. & Community Renewal* (269 AD2d 156 [1st Dept 2000]), the Appellate Division affirmed DHCR's determination that a lobby attendant was a required service and could not be unilaterally removed without prior agency approval. In *Matter of Waverly Mews Assoc. v DHCR* (294 AD2d 202 [1st Dept 2002]), the court held that eliminating a security guard constituted a diminution of services that triggered regulatory oversight under 9 NYCRR 2523.4.

Defendant's assertion that the planned changes are "mere additions rather than modifications" is unpersuasive (see NYSCEF Doc No. 38, ¶¶ 11, 13). This argument is directly

**153044/2025 Motion No. 001**

**Page 9 of 14**

contradicted by defendant's own acknowledgment that it intends to phase out human-operated services once it receives DHCR approval (see NYSCEF Doc No. 38, ¶ 16). A "modification" under the RSC includes both elimination and substitution of services in a materially different form, even if nominally labeled an "improvement."

**Removal of Doorbell and Installation of Intercom**

Defendants claim that an intercom is an enhancement is misleading. DHCR has determined that technological devices replacing existing human security measures are not equivalent. In *Matter of Sussex Apts. Assoc. Del, LLC*, DHCR Adm Rev Dckt No. ZL-410025-RO (June 11, 2018), DHCR found that virtual doorman systems and keyless fobs were insufficient substitutes for human oversight.

An intercom system—even one with video capabilities—cannot personally recognize tenants, verify guests, or physically intervene in a security breach. The loss of these essential services is permanent and non-compensable, justifying injunctive relief.

Defendant's assertion that installing the Carson intercom constitutes an enhancement is similarly unpersuasive. DHCR has consistently held that technological devices replacing existing human security services are not equivalent substitutes and require prior approval. For example, in *Matter of 1325 Fifth Ave.*, DHCR Adm Rev Dckt No. VG-410002-RO (Apr. 13, 2010), DHCR denied a landlord's application to replace security guards with a remotely monitored video system, holding that the substitution diminished the level of security provided to tenants.

Likewise, in *Matter of 118–11 84th Ave.*, DHCR Adm Rev Dckt No. AN-110015-RO (Feb. 15, 2013), DHCR determined that a doorman provides a security presence that cannot be replicated by a video system, rejecting the owner's attempt to substitute technology for human presence.

[* 10]

The Carson intercom system, even with video capabilities, lacks the ability to identify tenants, verify guest credentials, or physically respond to emergencies. The removal of human-operated doorbell services and installation of an intercom would result in a permanent loss of essential services, causing irreparable harm that cannot be remedied by monetary damages or rent reductions. These modifications warrant injunctive relief to preserve tenant security and quality of life.

### Elimination of Manually Operated Elevator and Installation of Automatic Elevator

In *Nasaw v Jemrock Realty Co.* (225 AD2d 385 [1st Dept 1996]), the Appellate Division affirmed the lower court's grant of injunctive relief where a landlord unilaterally replaced manually operated elevators with automated ones in a rent-stabilized building without prior DHCR approval. The court recognized that such a substitution constituted a reduction in services, warranting preservation of the original service pending DHCR's determination.

Here, defendant undermines its own claim that services will remain unaffected by admitting in its papers that it plans to remove elevator attendants once DHCR grants approval (NYSCEF Doc No. 38, ¶ 16). This admission confirms that the existing human-operated service will be discontinued. Under settled law, such a material change is impermissible absent agency approval (9 NYCRR 2523.4 [a] [1]).

### Reduction of Building Staff

The elimination of on-site building staff is not a minor operational change—it removes a vital human presence essential to tenant safety, emergency response, and daily support. Courts and DHCR have long recognized the value of services provided by doormen, porters, and lobby

attendants in maintaining secure and habitable housing (see *Douglas Elliman*, 269 AD2d at 156; *Peyton*, Index No. 155047/2014).

Building staff serve as the first point of contact during medical emergencies, security concerns, or accessibility challenges. Elderly and disabled tenants rely on staff for mobility assistance, package delivery, and safety monitoring. Without this staff presence, residents are vulnerable to delays, increased risk, and isolation.

The removal of staff represents an irreversible harm not compensable by monetary damages or rent abatements. It fundamentally alters the character of the building and justifies injunctive relief to maintain the status quo during DHCR review (see *Waverly Mews*, 294 AD2d at 202 [removal of security guard found to be service reduction]).

**Elimination of Mail and Package Receipt by Building Staff**

Defendant's argument that shifting from door-to-door package delivery to lobby mailboxes is a minor inconvenience fails to account for the effect on elderly and mobility-impaired tenants. In *Matter of Park West Village Tenants Assn.*, DHCR determined that eliminating door-to-door package delivery constituted a reduction in required services that imposed accessibility burdens and required prior approval (DHCR Adm Rev Dckt No. YI-410016-RO [July 26, 2006]).

Defendant's reliance on RSC § 2520.6 (r) (3) to justify the addition of an intercom without DHCR approval is misplaced. While the regulation permits landlords to provide additional services, it does not exempt those additions from DHCR oversight where they alter or affect required services.

Indeed, RSC § 2522.4 (a) (1) requires DHCR approval for any modification to required services—even when no rent increase is sought. Similarly, RSC § 2523.4 (a) allows tenants to file complaints for unlawful service reductions.

It is hypocritical for Defendant to argue that Plaintiffs must seek relief through DHCR while refusing to file its own application for approval. Requiring Plaintiffs to navigate an administrative process while Defendant proceeds with unapproved changes undermines the very regulatory scheme designed to protect them. The Court finds that each of defendant's proposed modifications would result in the permanent and irreparable loss of long-standing tenant services, diminishing residents' security, quality of life, and access to essential amenities. These harms cannot be adequately compensated through monetary damages or rent abatements and thus warrant injunctive relief (see Nasaw v Jemrock Realty Co., 225 AD2d 385 [1st Dept 1996]; Peyton v PWV Acquisition LLC, Index No. 155047/2014 [Sup Ct, NY County 2014]).

## CONCLUSION

Public policy and legal precedent favor maintaining essential building services until the Defendant applies to DHCR seeking authorization for any proposed service modifications, and DHCR issues a determination thereon. Pursuant to the RSC § 2522.5(e) and the "RER" § 2202.21, a landlord must obtain prior approval from DHCR before implementing any reduction, substitution, or modification of required services.

Here, Defendant has not obtained such approval. In the absence of compliance with this condition precedent, Plaintiffs have demonstrated a high likelihood of success on the merits. Plaintiffs have also shown irreparable harm, as the removal of elevator staff, who functioned not only as *de facto* security personnel but also as in-person mailroom attendants, would result in a permanent diminution in their quality of life, which cannot be adequately compensated by monetary damages or rent abatements. The balance of equities similarly favors Plaintiffs, as maintaining the status quo pending DHCR review imposes minimal hardship on the Defendant while safeguarding Plaintiffs from significant, non-compensable harm. Accordingly, it is hereby:

**ORDERED** that Plaintiffs' OSC is granted in its entirety, and the TRO becomes a preliminary injunction; and it is further

**ORDERED** that Defendant and their agents, employees, representatives, attorneys and all persons acting on their behalf, including, but not limited to, Tri-Hill Management LLC, are enjoined from the following actions, until such actions are authorized by a duly issued order from DHCR, or subsequent order of this Court:

1)   Removing the doorbell to the inner door of the lobby;

2)   Installing an intercom system;

3)   Eliminating the manually operated elevator;

4)   Installing automatically operated elevators;

5)   Reducing building staff; and

6)   Eliminating mail and package receipt by building staff and door-to-door delivery of mail and packages to tenants.

_____4/10/2025_____
DATE

PHAEDRA F. PERRY-BOND, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |